**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

TODD C. BANK, Individually and on Behalf of All
Others Similarly Situated,

                    Plaintiffs,

    -against-

SIMPLE HEALTH PLANS LLC, SIMPLE
INSURANCE LEADS LLC, STEVEN J. DORFMAN,
and MATTHEW E. SPIEWAK,

                    Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

18-CV-6457 (MKB) (ST)

**TISCIONE, United States Magistrate Judge:**

Plaintiff Todd C. Bank, Esq. ("Bank" or "Plaintiff") filed this putative class action *in propria persona* against Simple Health Plans LLC ("Simple Health Plans"), Simple Insurance Leads LLC ("Simple Insurance Leads"; with Simple Health Plans, the "Corporate Defendants"), Stephen J. Dorfman ("Dorfman"), and Matthew E. Spiewak ("Spiewak"; with Dorfman, the "Individual Defendants"; collectively, with the Corporate Defendants, "Defendants") on November 13, 2018. *See* Complaint ("Compl."), ECF No. 1, ¶¶ 2, 5–9, 41. Plaintiff alleges that Defendants are responsible for the sending of text messages, to him and "thousands of others," that violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Compl. ¶¶ 36–45. After both of the Individual Defendants failed to respond to the Complaint, the Clerk of Court entered their default, ECF No. 13, and Plaintiff moved for default judgment against them. ECF No. 14 ("Motion for Default Judgement" or "Mot. for Def. J."). Subsequently, Defendant Dorfman moved to strike the Clerk's entry of default, citing an Order of Receivership and Stay issued by the Honorable Darrin P. Gayles of the United States District Court for the Southern District of

- 1 -

Florida. ECF No. 15 ("Motion to Vacate Entry of Default" or "Mot. to Vacate Def."); *see also FTC v. Simple Health Plans LLC*, 379 F. Supp. 3d 1346, 1365–1377 (S.D. Fla. 2019).[1] The Honorable Margo K. Brodie has referred both Plaintiff's Motion for Default Judgment and Defendant Dorfman's Motion to Vacate Entry of Default to this Court for a report and recommendation. Order dated April 11, 2019; Order dated May 2, 2019.

For the reasons discussed below, the Court recommends that Plaintiff's Motion for Default Judgment against the Individual Defendants be DENIED without prejudice, but that Plaintiff be granted leave to file an amended complaint.

## BACKGROUND[2]

Plaintiff resides within the geographic boundaries of the Eastern District of New York. Compl. ¶ 5. The Corporate Defendants are limited liability companies organized and located in Florida. *Id*. ¶¶ 6–7. The Individual Defendants are natural persons who both reside in Florida and

---

[1] The Order of Receivership and Stay that Dorfman has submitted in this case is a temporary restraining order originally issued on October 31, 2018. *See* ECF No. 15-1 (Temporary Restraining Order); *see also* ECF No. 4-1 (same, submitted by attorney for the Receiver). Judge Gayles has since adopted the text of that order, virtually verbatim, in a preliminary injunction issued on May 14, 2019. *See Simple Health Plans LLC*, 379 F. Supp. 3d at 1365–1377. In discussing the effect of the Corporate Defendant's placement in receivership on Plaintiff's ability to maintain this action, the Court will refer to the provisions of the currently operative preliminary injunction, rather than those of the TRO.

[2] The following facts drawn from Plaintiff's Complaint are allegations which are accepted as true in light of the Individual Defendants' default. *See* 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief."); *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (defendant's liability on default may be established by "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs") (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

are principals of both of the Corporate Defendants. *Id*. ¶¶ 8–9; ECF Nos. 10–11 ("Ex. Affs. of Serv."). In the course of serving in their professional capacities, the Individual Defendants set the policies and control the daily operations of the Corporate Defendants. Compl. ¶¶ 32–33.

Plaintiff initiated the present action in response to his receipt of an unsolicited text message on October 4, 2018 which contained an advertisement for the sale of health insurance. *Id*. ¶¶ 15–16. This text message was sent to Plaintiff's cell phone through automated equipment operated by Defendant Simple Health Plans, *id*. ¶¶ 17–26, and was apparently one of many similarly unsolicited text messages containing advertisements whose placement was directed by the Individual Defendants to nonconsenting members of the general public, *id*. ¶¶ 29–30, 34. Plaintiff contends that Defendants' text messages constituted "telemarketing" pursuant to 47 C.F.R. § 64.1200(f)(12), *id.* ¶ 28; that the sending of these messages violated the TCPA, 47 U.S.C. § 227(b)(1)(a)(iii), *id.* ¶ 37; and that the Individual Defendants had actual or constructive knowledge of these violations but continued to direct the Corporate Defendants to engage in additional actions of this nature, *id.* ¶ 35. Plaintiff also seeks class certification of his TCPA claim, *id.* ¶¶ 41–45.

Summonses against all Defendants were issued on March 13, 2018. ECF No. 6. The following day, an attorney representing the receiver in the case *FTC v. Simple Health Plans LLC*, No. 18-CV-62593 (S.D. Fla.), filed a letter with this Court. *See* ECF No. 4 ("Notice of Receivership and Stay"). The letter indicated that Judge Gayles, who is presiding over that case, had entered a Temporary Restraining Order appointing a receiver over the Corporate Defendants and their assets and enjoining the commencement of any other legal proceedings against the

Corporate Defendants or their assigns. *Id.*; ECF No. 4-1 ("TRO").[3] In response, Plaintiff filed a letter asserting that the receivership order does not bar Plaintiff's action, ECF No. 5 ("Opp'n to Notice of Stay"), because the order (i) only enjoined suit against the Corporate Defendants and not the Individual Defendants, (ii) did not enjoin Plaintiff himself from bringing suit against the Corporate Defendants, or, in the alternative, (iii) was void for violating Plaintiff's due process rights in that it did not require actual notice of the receivership to Plaintiff before enjoining his ability to bring suit. *Id.* ¶¶ 8–10.

The Individual Defendants, for their part, failed to appear, answer, or otherwise timely respond to the Complaint despite being properly served. *See* Ex. Affs. of Serv., ECF Nos. 10–11. On March 26, 2019, Plaintiff filed a request for entry of default by the Clerk of the Court for both Individual Defendants (but not the Corporate Defendants). *See* ECF No. 12 ("Motion for Entry of Default"). Default was entered against the Individual Defendants on March 29, 2019, ECF No. 13 ("Entry of Default"), after which Plaintiff proceeded to file a motion for default judgment against them, requesting (i) a finding that the Individual Defendants are liable for violating the TCPA, Mot. for Def. J. at 19,[4] and (ii) leave to take discovery in support of his anticipated motion for class certification, *id.* at 17–19.[5] On April 25, 2019, Defendant Dorfman, acting *pro se*, filed a

---

[3] As discussed further, *infra*, Judge Gayles specifically enjoined suits against the "Receivership Entities," which the order defines to include the Corporate Defendants in this case as well as certain other business entities.

[4] Plaintiff filed his Motion for Default Judgment together with several exhibits in a single docket entry on ECF. *See* ECF No. 14. As such, the page numbers of this motion cited by the Court are the page numbers assigned by ECF, rather than those on the documents themselves.

[5] Plaintiff does not request any damages from the Individual Defendants in his Motion for Default Judgment, which the Court construes as an indication that Plaintiff only seeks a determination of their liability at this time.

Motion to Vacate the Entry of Default against him, citing the Order of Receivership and Stay issued by Judge Gayles. *See* Mot. to Vacate Def.[6] Plaintiff filed an opposition to Dorfman's motion in which he merely referred to his opposition to the Notice of Receivership and Stay that was submitted by counsel for the receiver. *See* ECF No. 16 ("Plaintiff's Opposition to the Motion to Vacate Default Judgment"). Currently before this Court are Plaintiff's Motion for Default Judgment against the Individual Defendants and Dorfman's Motion to Vacate Entry of Default. ECF Nos. 14–15.

## DISCUSSION

### i.    *The Stay Does Not Prohibit Plaintiff's Action against Dorfman or Spiewak*

Preliminarily, the Court addresses whether Judge Gayles' order placing the Corporate Defendants in receivership prevents Plaintiff from maintaining this action against the Individual Defendants.

Dorfman cites the section of the TRO captioned "Stay of Actions" in support of his claim that Judge Gayles has stayed Plaintiff's lawsuit against him. Mot. to Vacate Def. at 1. The corresponding "Stay of Actions" section in the now operative preliminary injunction establishing the receivership is found at *Simple Health Plans LLC*, 379 F. Supp. 3d at 1374–75 (hereinafter, "the Stay").

The Stay does not support Dorfman's claim that Judge Gayles stayed actions against him. The Stay explicitly enjoins "[c]ommencing, prosecuting, or continuing a judicial, administrative,

---

[6] Although Dorfman requests in his letter that the District Court "strike the clerk's default judgement," Mot. to Vacate Def. at 1, the Court construes this request as a motion to vacate the Clerk's entry of default against him.

or other action or proceeding against the Receivership Entities[.]" *Simple Health Plans LLC*, 379 F. Supp. 3d at 1374. However, Judge Gayles' order defines "Receivership Entities" as "the Corporate Defendants as well as any other [associated] entity . . . that the Receiver determines is controlled or owned by any Defendant." *Id.* at 1370 n.17. In turn, Judge Gayles' order defines the "Corporate Defendants" as "Simple Health Plans LLC[,] Simple Insurance Leads LLC[,]" and other related corporations that are not defendants in the instant action. *Id.* at 1352. As such, Dorfman and Spiewak are not "Receivership Entities" against whom the Stay expressly prohibits legal proceedings. *See also, generally*, ENTITY, *Black's Law Dictionary* (11th ed. 2019) ("An organization (such as a business or a governmental unit) that has a legal identity apart from its members or owners.").

Additionally, the Stay enjoins "persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants . . . from taking action that would interfere with the exclusive jurisdiction of [Judge Gayles'] Court over the Assets or Documents of the Receivership Entities[.]" *Simple Health Plans LLC*, 379 F. Supp. 3d at 1374.[7] The order indicates that the assets subject to the receivership are those are "in the possession, custody, or under the control of, any Receivership Entity . . . including Assets the Receiver has a reasonable basis to believe were purchased using funds from any Receivership Entity's corporate accounts . . . ." *Id.* at 1370.

---

[7] The section of Judge Gayles' order captioned "Non-Interference with the Receiver" similarly enjoins "any [] person served with a copy of th[e] Order" from "[i]nterfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership." *Simple Health Plans LLC*, 379 F. Supp. 3d at 1374.

By filing his Motion for Default Judgment, Plaintiff is seeking to "establish" a "claim," *id.* at 1374, against the Individual Defendants. However, the Individual Defendants' assets, from which Plaintiff is attempting to collect monetary damages by seeking to hold them personally liable under the TCPA, are not subject to the receivership. There is no indication in the record that the maintenance of Plaintiff's action against either of the Individual Defendants would "interfere with the exclusive jurisdiction of [Judge Gayles'] Court over the Assets or Documents of the Receivership Entities," *id.* at 1374, because Plaintiff has not prosecuted his claims against either of the Corporate Defendants in this action, which are the only "Receivership Entities" he sued. The Court recognizes that the receiver has the authority to place either of the Individual Defendants' assets in receivership if "he has a reasonable basis to believe" that those assets were "purchased using funds from any Receivership Entity's corporate accounts[.]" *Id.* at 1370. However, Judge Gayles' order only prohibits interference with the disposition of assets that are actually "subject to the receivership," not those that are only potentially subject to the receivership. *See generally Becker v. Green*, No. 09-CV-226 (JJB) (DLD), 2009 WL 2948463, at *4 (M.D. La. Aug. 27, 2009) ("[I]t is not for this court . . . to decide [] what constitutes an asset of the 'Receivership Estate.'"), *adopted by*, 2009 WL 2948407 (M.D. La. Sept. 14, 2009). Counsel for the receiver has already appeared in this action, and, rather than indicating that the Stay prohibits suit against the Individual Defendants, only repeated the language of Judge Gayles' order enjoining proceedings "against the Receivership Entities." Notice of Receivership and Stay at 2.[8]

---

[8] Additionally, the Court notes that the text of the docket entry that through which counsel for the receiver submitted the Notice of Receivership and Stay names the Corporate Defendants as the parties who filed the notice, not the Individual Defendants. *See* ECF No. 4. This further

As such, the Court finds no indication in the record that the Stay prevents Plaintiff's action from proceeding against Individual Defendants.[9]

Finally, the Court notes that the provisions in Judge Gayles' order are highly similar to those in other orders establishing receiverships in cases brought by the FTC. *See, e.g.*, *FTC v. Digital Altitude LLC*, No. 18-CV-729 (JAK) (MRWX), 2018 WL 1138425, at \*2–10 (C.D. Cal. Mar. 1, 2018). Some such orders, unlike Judge Gayles', stay legal proceedings against both the corporate entities subject to the receivership *and* the individual officers of those entities. *See, e.g.*, *FTC v. Bunzai Media Grp., Inc.*, No. 15-CV-4527 (GW) (PLAX), 2015 WL 5305243, at \*14 (C.D. Cal. Sept. 9, 2015) (enjoining commencement of proceedings "against the Defendants"); *id.* at \*3 (defining "Defendants" as "all of the Individual Defendants and Corporate Defendants"). Receivership orders issued by other courts have prevented suits against the officers of the corporate defendants subject to the receivership in similarly clear fashion. *See, e.g.*, *SEC v. Platinum Mgmt. (NY) LLC*, No. 16-CV-6848 (DLI) (VMS), 2017 WL 10507414, at \*5 (E.D.N.Y. Oct. 16, 2017) (explicitly enjoining legal action against "any of the Receivership Entities' past or present officers,

---

suggests that counsel for the receiver does not interpret Judge Gayles' order to prohibit suit against the Individual Defendants.

[9] The Court also recognizes that even if the specific provisions of Judge Gayles' injunction did not specifically prohibit interference with the Corporate Defendants' assets, longstanding federal common law restricts district courts from encumbering assets subject to a receivership in another federal district. *See Riehle v. Margolies,* 279 U.S. 218, 224 (1929) ("Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him."), *cited in In re CitX Corp.*, 302 B.R. 144, 156 (Bankr. E.D. Pa. 2003). Again, though, because the Individual Defendants' personal assets are only *potentially* subject to the receivership rather than definitively subject to the receivership, the existence of the receivership does not provide a basis to stay Plaintiff's action against the Individual Defendants.

directors," etc.); *SEC v. Bivona*, No. 16-CV-1386 (EMC), 2016 WL 5899288, at *6 (N.D. Cal. Oct. 11, 2016) (same). The fact that other similar injunctions do explicitly prohibit legal proceedings against individual corporate officers further suggests that Judge Gayles' order does not.

As such, the Court recommends allowing this case to proceed against the Individual Defendants.[10]

> ii.    *Plaintiff's Motion for Default Judgment Should Be Denied without Prejudice*

On the merits, the allegations in Plaintiff's Complaint, accepted as true, are insufficient to establish the Individual Defendants' personal liability under the TCPA. As such, Plaintiff's Motion for Default Judgment against the Individual Defendants should be denied.

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)) (internal quotation marks omitted). "However, the fact that a complaint stands unanswered does not suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." *Fairfield Fin. Mortg. Grp., Inc. v. Luca*, 925 F. Supp. 2d 344, 348 (E.D.N.Y. 2013) (quoting *Gunawan v. Sake Sushi Rest.*, 897 F.Supp.2d 76, 83 (E.D.N.Y.2012)) (internal quotation marks and brackets

---

[10] As Plaintiff seems to acknowledge by not pursuing certificates of default against either of the Corporate Defendants, Plaintiff's claims against Simple Health Plans, LLC and Simple Insurance Leads, LLC should be stayed pending the resolution of the FTC's action against those defendants in the Southern District of Florida.

omitted). At the default stage, "[t]he legal sufficiency of [a plaintiff's allegations] is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Liberty Mut. Ins. Co. v. Project Tri-Force, LLC*, No. 18-CV-427 (AJN), 2019 WL 1349720, at *2 (S.D.N.Y. Mar. 26, 2019) (citing *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014)); *accord Belichenko v. Gem Recovery Sys.*, No. 17-CV-1731 (ERK) (ST), 2017 WL 6558499, at *2 (E.D.N.Y. Dec. 22, 2017) (citing *Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011) and *Zapolski v. Fed. Republic of Germany*, No. 09-CV-1503 (BMC) (LB), 2009 WL 5184325, at *1 (E.D.N.Y. Dec. 28, 2009)).

Here, Plaintiff's sole cause of action asserts that Defendants violated 47 U.S.C. § 227(b)(1)(a)(iii). Compl. ¶¶ 36–40. This provision of the TCPA provides, in relevant part, that it is "unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013) ("[T]o prove that a defendant violated the TCPA in a case involving a cell phone, a plaintiff must establish that (1) the defendant called his or her cell phone, and (2) the defendant did so using an ATDS or an artificial or prerecorded voice."). The statute provides a private right of action to any person contacted in violation of section 227(b) and any subsection thereof, allowing a prevailing plaintiff to recover statutory damages of up to $500 for each violation and up to $1500 for each knowing or willful violation. *Id.* § 227(b)(3). Although the Second Circuit has not addressed the issue specifically, several district courts, including at least one in the Second Circuit, have held that officers of a corporation may be personally liable for

violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5–6 (S.D.N.Y. Mar. 29, 2016) (discussing out-of-circuit decisions and denying defendants' motion to dismiss plaintiff's claim for personal liability of corporate officer).

As discussed below, the Court finds that, although Plaintiff's allegations are sufficient to establish that the text message Plaintiff received was a "call" made using an automatic telephone dialing system, they are insufficient to establish that either Dorfman or Spiewak is personally liable for the transmission of the text message.

### A. A text message is a "call" under the TCPA

It is well established that a text message qualifies as a "call" within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii). Guidance from the Federal Communications Commission has defined the language in the statute to include text messages for several years. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003). Courts have consistently recognized that a text message constitutes a call within the meaning of the statute. *See, e.g.*, *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018); *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 WL 1299939, at *2 (S.D.N.Y. Mar. 21, 2019). Therefore, the text message that Plaintiff received qualifies as a call for which TCPA liability may lie.

### B. The text message was sent using an "automatic telephone dialing system"

The Court concludes that the text message Plaintiff received was sent using an automatic telephone dialing system ("ATDS"). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential

number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Plaintiff's Complaint contains essentially two allegations suggesting that the text message was sent to him using an ATDS: a recitation of the definition in the TCPA, Compl. ¶ 25 ("The equipment that was used to send the Text Message had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers."), and a copy of the text message itself, *id.* ¶ 16.

"Courts have noted the difficulty of pleading facts regarding the technology used to make a call or send a text message absent discovery." *Krady v. Eleven Salon Spa*, No. 16-CV-5999 (MKB) (RML), 2017 WL 6541443, at *3 (E.D.N.Y. July 28, 2017) (citing *Duguid v. Facebook, Inc.*, No. 15-CV-985, 2016 WL 1169365, at *4 (N.D. Cal. Mar. 24, 2016) and *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012)), *adopted by*, 2017 WL 6542462 (E.D.N.Y. Dec. 21, 2017) (Brodie, J.). "In light of this difficulty, 'alleged violations of the TCPA . . . need not be pled with particularity.'" *Id.* (quoting *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014)); *accord Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015).

Nonetheless, courts generally require more than the mere claim that the call or text message was sent using an ATDS, instead requiring the plaintiff "to allege facts that would allow for a reasonable inference that an ATDS was used[.]" *Krady*, 2017 WL 6541443, at *4 (collecting cases). Relevant considerations may include whether the "text messages were sent from a 'short code' phone number, generic, impersonal content, and the volume or timing of the . . . messages," *id.*, as well as whether the message contained an "opt-out" link, *Wijesinha v. S. Fla. MGS, LLC*, 19-CV-20744 (UU), 2019 WL 2610523, at *2 (S.D. Fla. June 4, 2019). Ultimately, though, "[n]o

single fact in particular must necessarily be present or absent to meet the sufficiency requirement for pleading the use of an ATDS in a TCPA claim[.]" *Mogadam v. Fast Eviction Serv.*, No. 14-CV-1912 (JVS), 2015 WL 1534450, at *3 (C.D. Cal. Mar. 30, 2015).

Here, in light of the relaxed pleading standard for violations of the TCPA, the content of the text message sent to Plaintiff permits a reasonable inference that it was sent using an ATDS as Plaintiff alleges. This is the text message that was sent to Plaintiff:



The content of this message is clearly generic and impersonal. It is purely an advertisement and is not tailored to Plaintiff in any way. It is written in a typography that is characteristic of spam messages (e.g., unusual punctuation and the substitution of letters with numbers). The first line of the message reads "Updated 10/4," which suggests, although Plaintiff has only alleged that he received this one message, that multiple versions of the message were sent at multiple points in time. Finally, the last line of the message appears to contain a link that allows the recipient to opt out from receiving future messages, suggesting that there is a database of phone numbers to whom such messages are sent. To be sure, just because a text message looks like spam does not

- 13 -

definitively mean it was sent using an ATDS. Here, though, in light of the widely acknowledged difficulty faced by plaintiffs in determining the method by which the text was sent, the Court finds that the content of the text message permits a reasonable inference that it was sent using an ATDS.

      C.  <u>Plaintiff has not shown that either Individual Defendant is personally liable for the sending of the text message</u>

Although the allegations in Plaintiff's Complaint are sufficient to establish that he received a text message sent in violation of the TCPA, they are not sufficient to establish that the Individual Defendants are personally liable for this violation.

Although the Second Circuit has not explicitly addressed the issue, there has been a "longstanding consensus among district courts" throughout the country that corporate officers may be held personally liable for violations of the TCPA. *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018). Generally, those courts, including at least one in the Second Circuit, have held that the officer may be personally liable if he "had direct, personal participation in or personally authorized the conduct found to have violated the" TCPA. *Bais Yaakov of Spring Valley*, 2016 WL 1271693, at *6 (internal quotation marks and citation omitted); *accord Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); *Kopff v. World Research Grp., LLC*, No. 03-CV-1747 (PLF), 2006 WL 8449849, at *5 (D.D.C. Oct. 24, 2006); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 10-CV-253, 2012 WL 4074620, at *8 (W.D. Mich. June 21, 2012); *Jackson Five Star Catering, Inc. v. Beason*, No. 10-CV-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013); *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1060 (D. Or. 2014); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 12–CV–2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, No. 13-CV-1347 (JCC),

2014 WL 12103245, at *6 (W.D. Wash. Nov. 4, 2014); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-CV-22330 (PAS), 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015); *Mora v. Zeta Interactive Corp.*, No. 16-CV-198 (DAD) (SAB), 2016 WL 3477222, at *2 (E.D. Cal. June 27, 2016); *Cunningham v. Prof'l Educ. Inst., Inc.*, No. 17-CV-894 (ALM) (CAN), 2018 WL 6709515, at *4 (E.D. Tex. Nov. 5, 2018), *adopted by* 2018 WL 6701277 (E.D. Tex. Dec. 20, 2018); *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 324 F. Supp. 3d 973, 983 (N.D. Ill. 2018), *appeal docketed*, No. 19-1452 (7th Cir. Mar. 13, 2019). At least one circuit court seems to have endorsed this theory of liability. *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (affirming district court's decision to hold officers jointly and severally liable with corporation under personal participation liability theory).[11]

In his Complaint, Plaintiff generically characterizes the actions of the Individual Defendants in language similar to that which courts have used to describe personal participation liability. *See* Compl. ¶¶ 31–35. He alleges that the Individual Defendants "formulated, directed, and controlled" the sending of the text message, *id.* ¶ 34, and that they "had actual or constructive knowledge that [the Corporate Defendants] were violating the TCPA, but continued to direct [them] to engage in further violations of the TCPA," *id.* ¶ 35.

---

[11] Notably, two recent opinions from the Eighth Circuit and the Third Circuit have questioned this longstanding consensus. *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960–61 (8th Cir. 2019) (concluding that a corporate officer cannot be held liable for "direct, personal participation" unless he actually "initiated" the offending phone call); *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d at 160–61 (calling theory of personal participation liability into doubt but upholding district court's jury instructions containing a general formulation of the theory). As the Court will discuss, however, Plaintiff's allegations are insufficient to establish the Individual Defendants' liability even assuming the doctrine of personal participation liability is viable.

Courts have consistently found that conclusory allegations that corporate officers personally participated in violations of the TCPA are insufficient to state a claim. *See Lucas v. Gotra*, No. 18-CV-664, 2019 WL 3349957, at *7 (S.D. Ohio July 25, 2019), *adopted by*, 2019 WL 3753245 (S.D. Ohio Aug. 8, 2019) (citing cases); *see also Prof'l Educ. Inst., Inc.*, 2018 WL 6709515, at *5 ("Plaintiff provides no factual support to indicate that Hussey or Novielli oversaw day-to-day operations, set company policies, or were central figures and/or the guiding force behind the TCPA violations.") (citations omitted). Unlike his allegation that the text message was sent via an ATDS, which is supported by the language of the message itself, Plaintiff provides no specific detail to bolster his allegations that the Individual Defendants "formulated, directed, and controlled" the sending of the text message, Compl. ¶ 34. Effectively, these threadbare allegations amount to the claim that the Individual Defendants are principals of the Corporate Defendants. *See id.* ¶ 8–9, 31. That is insufficient to hold them individually liable. *See Universal Elections*, 787 F. Supp. 2d at 417 ("[O]fficers . . . are generally not liable for statutory violations based solely on their corporate offices or ownership.") (citations omitted).

Because Plaintiff has failed to sufficiently allege the Individual Defendant's personal liability, his Motion for Default Judgment against them should be denied. Plaintiff should nonetheless be given the opportunity to file an amended complaint containing specific allegations that permit a plausible conclusion that at least one of the Individual Defendants personally participated in the sending of the text message.[12]

---

[12] Given that Plaintiff has failed to present a prima facie case that either Individual Defendant could be held personally liable for any violation of the TCPA, Plaintiff's request to

**CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that Plaintiff's Motion for Default Judgment against Defendants Dorfman and Spiewak be DENIED without prejudice, and that Plaintiff be granted leave to file an amended complaint.[13]

Plaintiff is hereby directed to mail copies of this report and recommendation to all Defendants at their last known addresses and to file proof of delivery with the Court within five (5) business days.

**OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of both those objections and the right to appeal any order or judgment entered based on this report and recommendation. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008); *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v.*

---

conduct class-certification discovery, ECF No. 14 at 17–18, should also be denied without prejudice.

[13] Dorfman's Motion to Vacate the Entry of Default should be dismissed as moot because the Court recommends denying Plaintiff's Motion for Default Judgment against him. *See Butler v. Chromcraft Revington, Inc.*, No. 14-CV-237 (JD), 2015 WL 4743636, at *7 (N.D. Ind. Aug. 4, 2015) ("[S]ince the Court is dismissing the only count in this action as to which Mr. Kidston is a defendant, the motion to vacate the entry of default is moot. There are no longer any claims pending in this action against Mr. Kidston, so there is currently nothing for him to defend against. In addition, should Mr. Butler choose to amend his complaint so as to add any new claims against Mr. Kidston, he would have to serve Mr. Kidston with the amended complaint[,] and Mr. Kidston would be permitted to appear and respond to it, notwithstanding his earlier default as to the dismissed claim.") (citing Fed. R. Civ. P. 5(a)(2)).

- 17 -

*Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                 /s/ Steven L. Tiscione

                                 Steven L. Tiscione
                                 United States Magistrate Judge
                                 Eastern District of New York

Dated: Brooklyn, New York
       December 12, 2019