**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

TODD C. BANK, Individually and on Behalf of All
Others Similarly Situated,

                              Plaintiffs,             **REPORT AND**
                                                  **RECOMMENDATION**

    -against-

                                                 18-CV-6457 (MKB) (ST)

STEVEN J. DORFMAN

                             Defendant.
-------------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

# INTRODUCTION

       This case arises out of an unwanted text message received by the Plaintiff, Todd C. Bank.

The Plaintiff sued the individual defendant here, Steven Dorfman, for a violation of the

Telephone Consumer Protection Act, alleging that Mr. Dorfman was liable for unlawfully

making a call using an automatic telephone dialing system (ATDS) to the Plaintiff's cell phone.

After this Court denied Plaintiff's first motion for default judgment for failure to sufficiently

allege the Defendant's individual liability, the Plaintiff filed an amended complaint. Defendant

Dorfman failed to respond to the Amended Complaint, the Clerk of Court entered his default,

and Plaintiff moved for default judgment against him. For the reasons discussed below, I

recommend Plaintiff's motion for default judgment once again be denied.

# BACKGROUND

       Plaintiff Todd C. Bank, Esq. ("Bank" or "Plaintiff") filed this putative class action *in*

*propria persona* originally against Simple Health Plans LLC, Simple Insurance Leads LLC,

Steven J. Dorfman, and Matthew E. Spiewak on November 13, 2018, properly serving

defendants with a complaint and summons. *See* Complaint ("Compl.") ¶¶ 2, 5-9, 41, ECF No. 1; Proof of Serv., ECF Nos. 10, 11.  Plaintiff resides within the geographic boundaries of the Eastern District of New York. Amended Complaint ("Am. Compl."), ECF No. 20 ¶ 5.  The Defendant is a natural person who resides in Florida. *Id.* at ¶6; *see also* Apr. 23, 2019 letter, ECF No. 16.

On October 4, 2018, Plaintiff received an unsolicited text message to his cell phone from telephone number 1-866-623-8083 which read, "Updated 10/4 about – Personal & or family – Health//Insurance//Options & > Trump+@Care COVERAGE (888-787-7736) plans 4 everyone!" Am. Compl. ¶¶ 12-13, 22, ECF No. 20.  In his original and amended complaints, Plaintiff alleged the Defendant was responsible for the sending of such unsolicited text messages to him and "thousands of others," and that the sending of these messages violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Compl. ¶¶ 36-45, ECF No. 1. Am. Compl. ¶¶ 32-37, ECF No. 20.

After Mr. Dorfman and Mr. Spiewak failed to respond to the original complaint, the Clerk of Court entered their default (ECF No. 13), and Plaintiff moved for default judgment against them. ECF No. 14 ("Motion for Default Judgment" or "Mot. For Def. J.").  Subsequently, Mr. Dorfman, one of the defendants, moved to strike the Court's entry of default, citing an Order of Receivership and Stay issued by the Honorable Darrin P. Gayles of the United States District Court for the Southern District of Florida. ECF No. 15 ("Motion to Vacate Entry of Default" or "Mot. To Vacate Def."); *see also FTC v. Simple Health Plans LLC,* 379 F. Supp. 3d 1346, 1365-1377 (S.D. Fla. 2019).  This Court found that Judge Gayles' stay, which operated as a preliminary injunction, applied to the corporate entities in the original complaint, but did not apply to the individual defendants. *See Bank v. Simple Health Plans,* No. 18-cv-6457 (MKB)

(ST), 2019 WL 7878570, 2019 U.S. Dist. LEXIS 215228 (E.D.N.Y. Dec. 12, 2019) (*adopted by*

*Bank v. Simple Health Plans LLC*, 2020 WL 606619, 2020 U.S. Dist. LEXIS 21741 (E.D.N.Y.

Feb. 06, 2020)).

This Court, however, still proceeded to deny Plaintiff's motion for default judgment

against Mr. Dorfman and Mr. Spiewak on different grounds, specifically that Plaintiff's

complaint did not allege sufficient facts to plausibly show the individual defendants had the kind

of direct personal participation in the sending of the text messages as required under the TCPA to

hold a corporate officer personally liable. *See id.*

After this Court's denial, Plaintiff filed an amended complaint. *See* Am. Compl., ECF

No. 20.  This complaint alleged the same violation of the TCPA but only against one of the

previously named individual defendants, Mr. Steven Dorfman (hereinafter "the Defendant").

The complaint alleged additional facts not present in the original complaint, including that the

Defendant personally partook in creating a script used by salespersons at Simple Health Plans

LLC, that the language used in that script was approved by the Defendant, and that the

Defendant himself trained Simple Health Plan's salespersons in how to use that script. Am.

Compl. ¶¶ 27-29, ECF No. 20.  He also alleged that the Defendant was the CEO of Simple

Health Plans at the time the text message was sent, and that he owned 99% of Simple Health

Plans. *Id.* at ¶¶ 25-26.  A copy of the amended complaint was served upon the Defendant on

March 9, 2020 via first-class mail as allowed under Federal Rule of Civil Procedure 5(b)(2)(C).

Aff. of Serv., ECF No. 23.

No appearance or answer was filed in response to the amended complaint by the

Defendant within the 14 days required under FRCP Rule 15(a)(3) and ordered by this Court. *See*

Pl. Mot., 2 ¶ 2, ECF No. 27.  On June 9, 2021, Plaintiff requested a certificate of default (ECF

3

No. 25), which the Court Clerk issued on June 24, 2021 (ECF No. 26).  Plaintiff then moved for default judgment against the Defendant (ECF No. 27), which is the action at issue here.

In Plaintiff's motion, he asks the Court for a default judgment against the Defendant as well as for permission to engage in class-certification discovery pursuant to Rule 45 of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, a Plaintiff may obtain a default judgment where the Defendant has failed to plead or otherwise defend an action. FRCP R. 55(a). Where the Defendant has failed to plead or otherwise defend an action, the Clerk of Court must enter the party's default. *Id.*  Provided the Plaintiff's claim is not for a sum certain or computable amount, the Plaintiff must then apply to the Court for a default judgment. FRCP R. 55(b)(2).

Default judgments are extreme remedies.  As such, they are "generally disfavored and are reserved for rare occasions." *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Where doubts exist as to the appropriateness of a default judgment, the doubt should be resolved in favor of the Defendant. *Id.*

For a Court to order default judgment, it must find the Plaintiff's allegations in his complaint, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz,* 577 F.3d 79 (2d. Cir 2009).  At the default stage, "[t]he legal sufficiency of [a plaintiff's allegations] is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Liberty Mut. Ins. Co. v. Project Tri-Force, LLC*, No. 18-CV-427 (AJN), 2019 WL 1349720, at *2 (S.D.N.Y. Mar. 26, 2019) (citing *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014)); *accord Belichenko v. Gem Recovery Sys.*, No. 17-CV-1731 (ERK) (ST), 2017

WL 6558499, at *2 (E.D.N.Y. Dec. 22, 2017) (citing *Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011) and *Zapolski v. Fed. Republic of Germany*, No. 09-CV-1503 (BMC) (LB), 2009 WL 5184325, at *1 (E.D.N.Y. Dec. 28, 2009)). *Twombly* and *Iqbal* command that all elements of the plaintiff's claim must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).

Plaintiff is proceeding *pro se* and such litigants are generally held to "less stringent standards." *Oyekoya v. United States,* 108 F. Supp. 2d 315, 317 (S.D.N.Y. 2000). However, Plaintiff is a licensed attorney, and "pro se attorneys...typically 'cannot claim the special consideration which the courts customarily grant to pro se parties." *Harbulak v. County of Suffolk,* 654 F.2d 194, 198 (2d Cir. 1981).

## DISCUSSION

### I.    *Direct Liability is Available Against Corporate Officers Under § 227(b)(1)(a)(iii) of the TCPA*

Here, Plaintiff's sole cause of action asserts that the Defendant violated 47 U.S.C. § 227(b)(1)(a)(iii). Am. Compl. ¶¶ 31–35, ECF No. 20.  That provision of the TCPA provides, in relevant part, that it is "unlawful for any person within the United States . . . to make any call [or text message] . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013) ("[T]o prove that a defendant violated the TCPA in a case involving a cell phone, a plaintiff must establish that (1) the defendant called his or her cell phone, and (2) the defendant did so using an ATDS or an artificial or prerecorded voice.").  The statute provides a private right of action to any person

contacted in violation of section 227(b) and any subsection thereof, allowing a prevailing plaintiff to recover statutory damages of up to $500 for each violation and up to $1500 for each knowing or willful violation. 47 U.S.C. § 227(b)(3).  Here, the plaintiff has not pled any facts showing that the Defendant physically sent the text message at issue.  Therefore, Defendant would need to be liable under another theory of liability for a default judgment to be issued.

Vicarious liability is available under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); 28 F.C.C. Rcd. 6574.  To prove vicarious liability, plaintiff must show a fiduciary relationship existed between a principal and agent where the principal manifested assent to the agent acting on his behalf and subject to his control. *See* 28 F.C.C. Rcd. 6574, *6586. In the alternative, plaintiff would have to show apparent authority on the part of the agent, and that apparent authority would have to be traceable to a manifestation of the principal. *Id.* Or, Plaintiff could plead ratification by the principal. *Id.*  Nowhere in Plaintiff's complaint does he allege a fiduciary relationship in which the Defendant was a principal. *See Am. Compl,* ECF No. 20.  Nor does he allege any agent acted on the Defendant's behalf. *Id.*  In fact, nowhere in the complaint does the Plaintiff allege who actually operated the ATDS to send the text at issue, much less his or her relationship to the Defendant.  Instead, Plaintiff alleges the Defendant is directly liable because the Defendant personally took part in creation of a script used by salespersons, approved the script, and trained staff in how to use the script. *Id.* at ¶¶ 7- 9.

Although the Second Circuit has not addressed the issue specifically, several district courts, including at least one in the Second Circuit, have held that corporate officers may be personally liable for violations of 47 U.S.C. § 227(b)(1)(A)(iii) even if they did not physically perform the proscribed conduct. *See Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5–6 (S.D.N.Y. Mar. 29, 2016) (discussing out-of-circuit

6

decisions and denying defendants' motion to dismiss plaintiff's claim for personal liability of corporate officer). The "longstanding consensus among district courts" is that corporate officers may be held personally liable for violations of the TCPA if the officer "had direct, personal participation in or personally authorized the conduct found to have violated the" TCPA. *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018); *see Bais Yaakov of Spring Valley*, 2016 WL 1271693 at *6 (internal quotation marks and citation omitted); *accord Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); *Kopff v. World Research Grp., LLC*, No. 03-CV-1747 (PLF), 2006 WL 8449849, at *5 (D.D.C. Oct. 24, 2006); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 10-CV-253, 2012 WL 4074620, at *8 (W.D. Mich. June 21, 2012); *Jackson Five Star Catering, Inc. v. Beason*, No. 10-CV-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013); *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1060 (D. Or. 2014); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 12–CV–2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, No. 13-CV-1347 (JCC), 2014 WL 12103245, at *6 (W.D. Wash. Nov. 4, 2014); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-CV-22330 (PAS), 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015); *Mora v. Zeta Interactive Corp.*, No. 16-CV-198 (DAD) (SAB), 2016 WL 3477222, at *2 (E.D. Cal. June 27, 2016); *Cunningham v. Prof'l Educ. Inst., Inc.*, No. 17-CV-894 (ALM) (CAN), 2018 WL 6709515, at *4 (E.D. Tex. Nov. 5, 2018), *adopted by* 2018 WL 6701277 (E.D. Tex. Dec. 20, 2018); *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 324 F. Supp. 3d 973, 983 (N.D. Ill. 2018), *appeal docketed*, No. 19-1452 (7th Cir. Mar. 13, 2019). At least one circuit court seems to have endorsed this theory of liability. *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370,

375 (4th Cir. 2013) (affirming district court's decision to hold officers jointly and severally liable with corporation under personal-participation liability theory).

This approach is in accord with common law personal-participation liability. *See Folwell v. Miller,* 145 F. 495, 496 (2d Cir. 1906) ("[The defendant] is not personally liable because of his official capacity…in the absence of personal participation in the tortious act.").  It also is consistent the text of the statute.  The text of 47 U.S.C § 227(b)(1)(A) reads, in relevant part, "It shall be unlawful for *any person*…to make any call…using any automatic telephone dialing system…to any…cellular telephone service." 47 U.S.C. § 227(b)(1)(A).  The text does not limit liability such that only one person can be responsible for each call, instead using the term "any person."

The approach also makes sense given the purpose of the TCPA. Congress enacted the TCPA to "shield telephone customers from unwanted intrusions…" *Jenkins v. Nat'l Grid USA*, No. 15-cv-1219 (JS) (GRB), 2016 U.S. Dist. LEXIS 46095 at *8 (E.D.N.Y. 2016) (*citing Mims v. Arrow Fin. Servs.. LLC.,* 132 S. Ct. 740, 745 (2012)).  It would be consistent with the Congressional purpose in passing the TCPA to hold all those who directly and personally participated in or authorized the prohibited acts responsible.  To hold otherwise would allow for an employee to be directly liable merely for operating the ATDS, but not an officer who ordered the employee to engage in such conduct.  Such a result would be unfair in allowing the more powerful and responsible party to avoid liability and would run contrary to Congress' intention to disincentivize such conduct by only directly punishing those who have little to no say in when an ATDS is used to make an unsolicited call.

In the Second Circuit, the Southern District of New York has held that corporate officers may be directly liable under the TCPA if they had "direct, personal participation in or personally authorized the conduct found to have violated the statute." *Bais Yaakov of Spring Valley v.*

*Graduation Source LLC*, No. 14-cv-3232 (NSR), 2016 U.S. Dist. LEXIS 42615 at *15-17 (S.D.N.Y. 2016). The Federal Communications Commission has concurred in adjudication, citing *Bais Yaakov* and noting, "…the Commission and the majority of courts have determined that individual officers may be liable for violations of the TCPA." 36 F.C.C. Rcd. 6225, 6250.

The Southern District of New York opinion in *Melito v. Am. Eagle Outfitters, Inc.* does not contradict this. In *Melito*, the Court held, regarding 47 U.S.C. § 227(b)(1)(A)(iii) that "the verb 'make' imposes civil liability only on the party that places the call or text." *Melito v. Am. Eagle Outfitters, Inc.,* Nos. 14-cv-02440 (VEC) 15-cv-00039 (VEC), 15-cv-02370 (VEC), 2015 WL 7736547, 2015 U.S. Dist. LEXIS 160349 (S.D.N.Y. Nov. 30, 2015). But the "party" the Court was referring to in *Melito* was not an individual party but a corporate party. In *Melito,* the issue was whether American Eagle Outfitters or Experian was liable under the TCPA for marketing texts sent by a third-party company. The Court held in that case that plaintiffs' claims against both entities did not meet the pleading standard because nowhere had plaintiffs alleged facts to show AEO or Experian sent the texts at issue, instead they were sent by a third-party company. *See Melito,* 2015 U.S. Dist. LEXIS 160349 at *14-17. In coming to this conclusion, the Southern District cites this Court's opinion in *Jackson v. Caribbean Cruise Line, Inc.*, another case that only held that a company whose employees did not operate the ATDS at issue could not be liable under 47 U.S.C. § 227(b)(1)(A). *See Jackson v. Caribbean Cruise Line,* 88 F. Supp. 3d 129 (E.D.N.Y. Feb. 17, 2015). Neither case discussed the direct liability of a corporate officer within the company that did indeed send the text messages at issue, which is the factual situation alleged here. In such a case, precedent dictates that direct liability will attach where said officer had "direct, personal participation in or personally authorized the conduct found to have violated the statute." *Bais Yaakov of Spring Valley,* 2016 U.S. Dist. LEXIS 42615 at *15-17.

9

Two recent opinions from the Eighth Circuit and the Third Circuit have scrutinized direct liability for corporate officers in a case like the one at issue here. *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960–61 (8th Cir. 2019); *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160–61 (3d Cir 2018). While these opinions are not binding, their reasoning is instructive in how to handle an area of law which has limited Second Circuit precedent.

In *Golan v. FreeEats.Com, Inc.,* the Eighth Circuit recognized that direct liability was available for corporate officers under the TCPA but questioned the plaintiff's interpretation of what acts by the defendant were required for that direct liability to attach. The Eighth Circuit held that status as a corporate officer alone was not enough for direct liability to attach, a holding consistent with common law personal-participation liability. In *Golan,* the portion of the TCPA at issue was § 227(b)(1)(B), not § 227(b)(1)(A), which required a defendant to "initiate" a prohibited of telephone call for liability to attach, as opposed to § 227(b)(1)(A) which makes it unlawful for any person to "make" the prohibited type of call. For direct liability to attach under § 227(b)(1)(B), the Eighth Circuit held, it was necessary not just for the corporate officer to have "active oversight or control over" the TCPA violation, but to "take the steps necessary to physically place a telephone call." *See Golan v. FreeEats.com, Inc.*, 930 F.2d 950, 961 (8th Cir. 2019).

The FCC is in agreement with the Eighth Circuit. In an adjudication in which seller liability was at issue where the seller hired a telemarketer to perform the actual proscribed activity, the FCC agreed with the Eighth Circuit that "initiate" within § 227(b)(1)(B) requires a "more direct connection between a person or entity and the making of a call" than "the mere fact that a company produces and sells a product." 28 F.C.C. Rcd. 6574, *6583 (2013). It noted that one way direct liability could attach to a seller which did not make the prohibited phone call was "by giving the [telemarketer] specific and comprehensive instructions as to the timing and manner of the call…"

10

*Id.* While in this case the Defendant is a corporate officer who works for the telemarketer itself, the FCC instruction and the Eighth Circuit opinion clarifies that it is not the duties incidental to the status of the defendant that control direct liability under the TCPA but the level of the defendant's actual involvement in the proscribed conduct. Under §227(b)(1)(B) the required level of involvement is equivalent to, at minimum, specific and comprehensive instructions as to the timing and manner of the call.

The Third Circuit seems to be the only court that has questioned the availability of direct liability against third parties regardless of their level of direct involvement in the proscribed conduct. It grounds that doubt in the fact that nowhere in the TCPA does Congress expressly provide for such liability, despite having done so in other statutes such as corporate antitrust statutes. *See City Select Auto Sales Inc. v. David Randall Assocs.*, 885 F.3d 154. 160-61 (3d Cir 2018). Yet, even in doing so, the Third Circuit acknowledges that personal-participation liability existed at common-law at the time Congress passed the TCPA, and that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related…liability rules and consequently intends its legislation to incorporate those rules." *City Select*, 885 F.3d at 160-61 (*quoting Meyer v. Holley*, 537 U.S. 280, 285 (2003)). And, despite its misgivings, the Third Circuit still assumed without deciding that the defendant in the case could have been found liable under the TCPA under a personal-participation liability theory because it acknowledged the District Court's instructions which provided for personal-participation liability under the TCPA "did not misstate the applicable law." *City Select,* 885 F. 3d at 162.

Given the broad consensus that the TCPA allows for direct liability for direct, personal participation by corporate officers, both from District Courts and the FCC, as well as the text of §

227(b)(1)(A)(iii) and the broader policy rationales of Congress in passing the TCPA, I recommend the Court find such liability is available in this case.

II.    *Plaintiff has not plausibility alleged direct liability under 47 U.S.C. 227(b)(1)(A)(iii)*

Our inquiry does not end, however, at the conclusion that direct liability is available under the TCPA.  For a corporate officer such as the defendant in this case to be liable under a direct liability theory, he or she must have authorized or engaged in direct, personal participation with the actual conduct prohibited by the statute. *Id.*  This comports with Supreme Court precedent, which limits the scope of the direct liability against a defendant to the statutory text. *See New Prime Inc. v. Oliveira,* 139 S. Ct. 532, 543 (2019); *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).

Here, the alleged violation is of 47 U.S.C. § 227(b)(1)(A)(iii).  This makes it unlawful for "any person…to make any call [with inapplicable exceptions]…using any automatic telephone dialing system…to any…cellular telephone service." 47 U.S.C § 227(b)(1)(A)(iii).

A text message is a "call" under the TCPA. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C. Rcd. 14014, 14115 (2003); *Krady v. Eleven Salon Spa,* No. 16-cv-5999 (MKB) (RML), 2017 WL 6541443, 2017 U.S. Dist. LEXIS 120139 (E.D.N.Y. July 28, 2017).  And, this Court found in its previous opinion in this case, that the Plaintiff had sufficiently alleged that an automatic telephone dialing service (ATDS) was used in the sending of the text message at issue. *See Bank v. Simple Health Plans,* No. 18-cv-06457 (MKB) (ST), 2019 WL 7878570, 2019 U.S. Dist. LEXIS 215228 at *13-15 (E.D.N.Y. Dec. 12, 2019) (*adopted by Bank v. Simple Health Plans LLC*, 2020 WL 606619, 2020 U.S. Dist. LEXIS 21741 (E.D.N.Y. Feb. 06, 2020)).

Therefore, the question here is whether the Plaintiff has sufficiently alleged facts to show this Defendant personally and directly participated in "mak[ing]" this text message and, because no definition exists in the statute, to answer that, the Court must define "make any call" as used within the TCPA.

Where a statute does not define a term, "we give the term its ordinary meaning." *Cont'l Terminals, Inc. v. Waterfront Comm'n of N.Y. Harbor,* 782 F.3d 102, 109 (*quoting Taniguchi v. Kan Pac. Saipan, Ltd.* 132 S. Ct. 1997, 2002 (2012)). The ordinary meaning of "making a call," in common parlance, is to place a call by taking some physical action, such as dialing numbers or tapping a person's name on an electronic "missed call" list. However, this statute also contemplates the use of an ATDS, which it defines as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers." 47 U.S.C. § 227(a)(1). So, making a call in 47 U.S.C § 227(b)(1)(A)(iii) cannot just mean dialing a phone number or clicking on a contact's name and waiting for a ring, as we would use it in everyday speech, because in a scenario contemplated by this section of the TCPA, it is ATDS equipment that performs that process. Instead, "make any call" must mean, in cases where an ATDS is used, the act of operating the ATDS which performs the machinations necessary to actually send the text message. It seems for a corporate officer to be directly liable under this section, he or she must have directly and personally participated in or authorized the specific operation of the ATDS that resulted in the sending of the text message at issue.

As noted above, the FCC has interpreted a similar provision in 47 U.S.C. § 227(b)(1)(B). That similar section of the TCPA, the next subsection after the one at issue here, proscribes "initat[ing]" a prohibited call as opposed to "mak[ing]" a prohibited call. In interpreting that provision, the FCC wrote that, "We conclude that a person or entity 'initiates' a telephone call

13

when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities…that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." 28 F.C.C. Rcd. 6574, *6583. While there are small differences between the two provisions ((b)(1)(A) includes an ATDS call, while (b)(1)(B) does not), they are highly similar provisions, with the main difference being different verbs for the proscribed conduct, and different types of phones receiving the proscribed calls. (b)(1)(B) makes it unlawful for any person "to initiate any [prohibited] telephone call to any residential telephone…" while (b)(1)(A) makes it unlawful for any person to "make any [prohibited] call to any emergency telephone line…any guest or patient room of a hospital, health care facility, elderly home, or similar establishment or…any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…" 47 U.S.C. § 227(b)(1).

Generally, "where Congress uses certain language in one part of the statute and different language in another, the Court assumes different meanings were intended." *Cruz-Miguel v. Holder*, 650 F.3d 189, 196 (2d Cir. 2011) (*quoting Sosa v. Alvarez-Machain,* 542 U.S. 692, 711 n.9 (2004)). It is difficult to discern why Congress here used different verbs in very similar statutes depending on the type of phone being called.  It likely has to do with the fact that the TCPA was written in 1991, when cell phones were in their infancy, and residential telephone lines were the dominant source of telephone communications.

The focus by Congress on residential telephones is clear from Senator Hollings' introduction of the bill that would become the TCPA on the Senate floor, in which he said of its purpose, "This bill will ban computerized telephone calls *to the home* and so-called junk fax…Computerized calls are the scourge of modern civilization. They wake us up in the morning;

14

they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone *right out of the wall*." 137 Cong. Rec. 17972, 18122-23 (emphasis added). Of the cellular telephone provisions, Senator Hollings said, "The bill also contains protections for…cellular and paging systems…these prohibitions are essential to ensuring that the safety of lives and property are not put at risk by these machines. These computers often call and then do not hang up the line…This can prevent the person called from using the telephone at all." 137 Cong. Rec. 17972, 18123. Extrapolating from this, Congress may have intended to capture more action within "initiate," such as necessary steps leading up the call, that it did not intend to capture with "make," as its main concern there was not with banning the overall practice but with the phone call itself tying up the receiving line.

This would make sense as "initiate" as a term connotes a temporally earlier attachment of liability than "make." The ordinary meaning of the word "initiate" is "start" or "begin," while the ordinary meaning of "making a call" is performing the actual act that connects your telephone to another.

Thus, while 47 U.S.C. § 227(b)(1)(B) may encompass some more removed steps necessary to physically place a telephone call, a corporate officer may be liable under 47 U.S.C. § 227(b)(1)(A) in a case involving an ATDS only where he or she operated the automatic telephone dialing system when it sent the specific text message at issue, authorized the specific usage of the ATDS which sent the text message at issue, or had direct, personal participation in the operation of the ATDS which sent the text message at issue. And, for a plaintiff in such a case to receive a default judgment, he must plead sufficient facts to show one of those three occurrences.

Here, Plaintiff has not pled sufficient facts to give rise to a plausible claim of direct liability on the part of the Defendant. His allegations as to the Defendant are that the Defendant participated

in the creation of a script used by salespersons of Simple Health Plans, that he approved that same script, and that he trained Simple Health Plans' salespersons in how to use that script. Am. Compl. ¶¶ 27-29, ECF No. 20. Plaintiff also alleges that he knows Simple Health Plans directed the sending of the text message at issue and numerous similar others because an employee named Lysette told him so. Am. Compl. ¶¶ 14-20, ECF No. 20. However, nowhere does Plaintiff allege that the Defendant himself operated the ATDS that sent these text messages. Nor does he allege that the Defendant authorized the operation of the ATDS which caused the text to be sent. Nor does he make any allegations that Mr. Dorfman personally and directly participated in the operation of the ATDS that sent this text message.

Instead, the personal and direct involvement alleged is the creation and approval of sales scripts and training employees in how to use those scripts. Plaintiff does not allege those specific scripts were used in the text message at issue, and so their creation, approval, and the subsequent training does not constitute direct and personal involvement in the sending of the text message. Even if Plaintiff did allege these scripts were used in this text message, the mere act of writing and approving a script for telemarketing which was then later used in a prohibited act is not direct and personal enough for liability to follow under 47 U.S.C. § 227(b)(1)(A). In sum, nowhere in his complaint has Plaintiff alleged direct, personal participation in the operation of the ATDS that sent the text message. Plaintiff's allegations do not rise to the level required by *Twombly* and *Iqbal*: The facts in the complaint, even when accepted as true, do not allow for the court to draw the reasonable inference that Dorfman was directly and personally involved in the sending of the text message at issue.

Plaintiff does allege that the Defendant owned 99% of Simple Health Plans and was CEO of Simple Health Plans at the time the text message was sent. Am. Compl. ¶¶ 25-26, ECF No. 20.

16

He also alleges that Simple Health Plans ordered the sending of the text message. *Id.* at ¶ 17. But the question of Simple Health Plans' liability is not before this Court in this action. Defendant Dorfman could be liable for Simple Health Plans' acts if the Court were to pierce the corporate veil, but that is only permitted under "extraordinary circumstances" when the Plaintiff can show "the corporation has been so dominated by an individual…that it primarily transacted the dominator's business rather than its own and can be called other's alter ego." *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979). The facts the Dorfman owned 99% of the company and was CEO, standing alone, do not permit veil-piercing.

This particular Plaintiff has run into this same issue, in this Court, many times when alleging TCPA violations. In *Bank v. Vivint Solar,* this Court found that Plaintiff Bank did not meet the pleading standard for a direct liability claim under TCPA because he did not plead any specific details regarding the actual source of the call at issue. *See Bank v. Vivint Solar, Inc.*, No. 18-cv-2555 (MKB), 2019 WL 2280731, 2019 U.S. Dist. LEXIS 30638 (E.D.N.Y. Feb. 25, 2019) (*adopted by Bank v. Vivint Solar,* 2019 U.S. Dist. LEXIS 48033 (E.D.N.Y. Mar. 22, 2019)). In *Bank v. Spark Energy LLC,* the Court found again that Plaintiff's complaint "lack[ed] sufficient 'factual allegations to support the conclusory statement that Defendant [initiated] the placement of [the calls]'" and dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6). *Bank v. Spark Energy, LLC,* No. 19-cv-4478 (PKC) (LB), 2020 U.S. Dist. LEXIS 175830 (E.D.N.Y. Sep. 24, 2020) (*quoting Vivint Solar*, 2019 U.S. Dist. LEXIS 48033 at *4). In *Bank v. Gohealth,* Plaintiff filed a TCPA claim based on a theory of vicarious liability, which was also dismissed for failing the pleading standard as "Plaintiff failed to allege plausible facts to support a claim of vicarious liability" including failing to allege that the calls were made on the Defendant's behalf or any agency relationship between the caller and the Defendant. *Bank v. Gohealth,* No. 19-cv-

5459, 2021 U.S. Dist. LEXIS 44110 at *32 (E.D.N.Y. Mar. 8, 2021).  Plaintiff should review the *Iqbal* and *Twombly* pleading standard and ensure, before filing any potential future complaints, that he can truthfully allege facts which would plausibly give rise to liability.

## CONCLUSION

Because Plaintiff has not pled sufficient facts to show the Defendant was personally and directly involved with the sending of the text message at issue, I recommend his motion for default judgment be DENIED.  As Plaintiff alleges his individual claim is typical of the class claims, I recommend the Court find that ordering class-certification discovery would be premature, and that that motion also be DENIED.  I recommend Plaintiff be granted leave to file an amended complaint, should he be able to truthfully allege facts which would plausibly show defendant's direct and personal involvement in the sending of the text message at issue.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                          /s/
                                            Steven L. Tiscione
                                            United States Magistrate Judge
                                            Eastern District of New York

Dated: Central Islip, New York
          December 21, 2021